UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAULINO DE LA CRUZ and
JUVENTINO RAMOS,

                        Plaintiffs,

            -against-

TREJO LIQUORS, INC. (d/b/a
TREJO LIQUORS & WINES), and
JOHANNY TREJO,

                        Defendants.

---

16cv4382 (VSB) (DF)

**REPORT AND
RECOMMENDATION**

---

**TO THE HONORABLE VERNON S. BRODERICK, U.S.D.J.:**

On June 10, 2016, plaintiffs Paulino De La Cruz ("De La Cruz") and Juventino Ramos

("Ramos") (collectively, "Plaintiffs") commenced this action pursuant to the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law (the

"NYLL"), §§ 190, *et. seq.*, and 650, *et seq.*, to recover unpaid overtime wages, unpaid

spread-of-hours pay, liquidated damages, statutory damages, prejudgment interest, and attorneys'

fees and costs from defendants Trejo Liquors, Inc. ("TLI") (d/b/a Trejo Liquors & Wines), and

Johanny Trejo ("Trejo") (collectively, "Defendants").  De La Cruz also seeks damages from

Defendants for allegedly terminating him in retaliation for complaining about wage-and-hour

violations.  Plaintiffs' Complaint was amended on August 18, 2016 and again on April 5, 2017,

and their Second Amended Complaint is now the operative pleading in this case.  After

Defendants failed to defend the action for 18 months, the Honorable Vernon S. Broderick,

U.S.D.J., entered a default judgment against them in Plaintiffs' favor (Dkt. 87) and referred the

matter to this Court to conduct an inquest concerning Plaintiffs' damages (Dkt. 88).

For the reasons discussed below, I recommend that Defendants be held jointly and

severally liable to Plaintiffs on all of the damages awarded.  As to plaintiff De La Cruz, I

recommend that the Court enter judgment in his favor for:  (1) damages in the amount of $157,785.94, representing (a) $77,264.04 in unpaid overtime wages, (b) $105.00 in unpaid spread-of-hours pay, (c) $70,416.90 in liquidated damages under the NYLL, and (d) $10,000.00 in statutory damages under the WTPA; and (2) prejudgment interest in the amount of $38,515.66, plus additional prejudgment interest to be calculated by the Clerk of Court from October 18, 2018 (the date of Plaintiffs' damages submissions) to the date of entry of final judgment.  I further recommend that the Court enter judgment in plaintiff Ramos's favor for: (1) damages in the amount of $42,577.23, representing (a) $17,226.48 in unpaid overtime wages, (b) $15,350.75 in liquidated damages under the NYLL, and (c) $10,000.00 in statutory damages under the WTPA; and (2) prejudgment interest in the amount of $8,937.00, plus additional prejudgment interest to be calculated by the Clerk of Court from October 18, 2018 to the date of entry of final judgment.  Finally, I recommend that Plaintiffs be awarded attorneys' fees and costs in the amounts of $30,832.87 and $400.00, respectively.

## BACKGROUND

### A.   Factual Background

Given Defendants' default, the well-pleaded allegations contained in the Second Amended Complaint, as summarized below, are deemed to be true, except for those allegations relating to damages.  (*See* Discussion *infra*, at Section I(A); Second Amended Complaint, dated Apr. 5, 2017 ("2d Am. Compl.") (Dkt. 43).)  The facts set out below are also taken from Declarations submitted by De La Cruz (*see* Declaration of Paulino De La Cruz, dated Apr. 10, 2018 ("De La Cruz Decl.") (Dkt. 83-13)), Ramos (*see* Declaration of Juventino Ramos, dated Apr. 10, 2018 ("Ramos Decl.") (Dkt. 83-14)), and Plaintiffs' counsel, Walker G. Harman, Jr., Esq. ("Harman") (*see* Declaration of Walker G. Harman, Jr., dated Apr. 24, 2018 ("Harman Decl.") (Dkt. 83-2)).

### 1.     <u>Plaintiff De La Cruz</u>

De La Cruz states in his Declaration that, from approximately 1992 to February 4, 2016, he was employed by TLI as a clerk at its business establishment, Trejo Liquors & Wines ("Trejo Liquors"). (*See* De La Cruz Decl. ¶¶ 4, 22.)  According to the Second Amended Complaint, Santiago Trejo owned TLI until he passed away in June 2015, at which time his wife, defendant Trejo, assumed ownership of the business. (*See* 2d Am. Compl. ¶¶ 12, 52.)  De La Cruz claims that he generally worked 56 hours per week, with nine-hour shifts on Monday through Thursday and 10-hour shifts on Friday and Saturday. (*See* De La Cruz Decl. ¶¶ 7-9.)  De La Cruz also claims that there were two weeks in June 2015 when he worked 80 hours per week. (*See id.* ¶¶ 10-12.)  Allegedly, De La Cruz was paid a fixed weekly salary that started at $200 and gradually increased over the years, ultimately reaching $550 in 2016. (*See id.* ¶¶ 5, 6, 13.)[1] De La Cruz claims that, throughout his employment at Trejo Liquors, he was not compensated at one and one-half times his regular rate of pay (or, indeed, at all) for the hours he worked in excess of 40 hours per week. (*See id.* ¶ 14.)

De La Cruz also alleges that, although he received partial paychecks toward the end of his employment, Defendants mostly paid his wages in cash and failed to provide him with "required notices and [to] keep accurate time records, in violation of the NYLL." (*See* 2d Am. Compl. ¶¶ 2, 25-26.)  Furthermore, De La Cruz claims that Trejo terminated his employment, on February 4, 2016, in retaliation for complaints he made to her regarding his lack of overtime pay. (*See id.* ¶¶ 29-30.)  De La Cruz alleges that, although Trejo claimed that she was terminating him

---

[1] The amounts that De La Cruz was paid at different points during his employment are broken down in the Court's damages calculations below. (*See* Discussion, *infra*, at Section II(A)(1).)

"because work was slow" and also implied that De La Cruz had been stealing from Trejo Liquors, these reasons were a pretext for unlawful retaliation.  (*See id.* ¶¶ 29-34.)

While De La Cruz was working at Trejo Liquors, he also maintained a part-time job as a taxi driver for Riverside Car & Limo ("Riverside").  (De La Cruz Decl. ¶ 30.)  Following his termination from Trejo Liquors, De La Cruz continued to work at Riverside, earning $200 per week, as he looked for full-time employment.  (*See id.* ¶¶ 30-31.)  After three months, De La Cruz began working longer hours and earning $500 per week from Riverside.  (*Id.* ¶ 35.)  After six months, De La Cruz was satisfied with his hours and ceased looking for new work.  (*Id.* ¶¶ 36-37.)

## 2.   **Plaintiff Ramos**

Ramos alleges that, from approximately 2002 to August 20, 2015, he was also employed at Trejo Liquors as a clerk.  (*See* Ramos Decl. ¶¶ 4, 16.)  Ramos claims he worked 44 hours per week, with seven-hour shifts on Monday through Thursday and eight-hour shifts on Friday and Saturday.  (*See id.* ¶¶ 8-9.)  Like De La Cruz, Ramos alleges that he was paid a fixed weekly salary that gradually increased over time; specifically, Ramos claims that he was initially paid $220 per week, and that, by the time he resigned in 2015, he was being paid $450 per week.  (*See id.* ¶¶ 5-6.)[2]  Also like De La Cruz, Ramos claims that, throughout his employment at Trejo Liquors, he was not compensated at one and one-half times his regular rate of pay (or at all) for the hours he worked in excess of 40 hours per week.  (*See id.* ¶ 11.)  Ramos also claims that Defendants paid him in cash and failed to keep time records of his hours or to provide required wage notices.  (*See id.* ¶¶ 13-14; *see also* 2d Am. Compl. ¶ 2.)

---

[2] The various amounts that Ramos was paid during his employment are also broken down in the Court's damages calculations below.  (*See* Discussion, *infra*, at Section II(B)(1).)

### B. **Procedural History**

As noted above, Plaintiffs commenced this action by filing a Complaint on June 10, 2016 (*see* Complaint, dated June 10, 2016 (Dkt. 1)), although the current operative pleading is the Second Amended Complaint, which was filed on April 5, 2017 (*see* 2d Am. Compl.). Defendants were initially represented by counsel, who filed motions to dismiss the original and amended pleadings.  (*See* Dkts. 16, 46.)  By Order dated May 10, 2017, however, Judge Broderick granted a motion by Defendants' counsel to withdraw, cautioned defendant TLI that, as a corporate entity, it would be at risk of default if it failed to retain new counsel to represent it in the action, and stayed all proceedings until June 9, 2017, to enable both TLI and Trejo to obtain new counsel.  (Dkt. 53.)  Neither defendant retained new counsel, and, on October 19, 2018, after they failed to appear for multiple status conferences, Judge Broderick issued an Order directing Defendants to show cause why a default judgment should not be entered against them, and setting a hearing for November 9, 2018.  (*See* Dkt. 84.)  After Defendants failed to appear at that hearing, and upon noting that "Defendants ha[d] failed to appear for, or comply with any Order that [the Court] ha[d] issued in, the last eighteen months," Judge Broderick entered a default judgment against them on November 13, 2018 (Dkt. 87),[3] and referred the matter to this Court for an inquest on damages (Dkt. 88).

Although, in connection with their motion for a default judgment, Plaintiffs set out the amounts that they claimed were due to them from Defendants in damages, interest, and attorneys' fees (*see* Dkt. 83), Defendants did not submit any challenge to those amounts after the default judgment was entered.  As a result, this Court issued a Scheduling Order on January 7,

---

[3] A more detailed chronology of the events leading to the Court's entry of a default judgment against Defendants is contained in Judge Broderick's November 13 Order.  (*See id.*)

5

2019, making clear that, if Defendants wished to contest the amounts being requested by

Plaintiffs, then they would need to respond to Plaintiffs' damages calculations and fee

application no later than February 6, 2019.  (Dkt. 89.)  This Court expressly cautioned

Defendants that, if they failed to respond to Plaintiffs' submissions by that date, then this Court

would proceed to issue a report and recommendation concerning damages on the basis of

Plaintiffs' submissions alone.  (*See id.*)  To date, Defendants have still filed no response to

Plaintiffs' submissions.

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Default Judgment

Where a defendant has defaulted, the court "is required to accept all of the [plaintiff's]

factual allegations as true and draw all reasonable inferences in [plaintiff's] favor, . . . but it is

also required to determine whether the [plaintiff's] allegations establish [the defendant's]

liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also*

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has

discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts

and need not agree that the alleged facts constitute a valid cause of action . . . ." (citation

omitted)).  In other words, because a defendant's default only establishes its liability based on

the *well-pleaded* allegations of the complaint, the court must still scrutinize the plaintiff's

pleading and find the claims sufficiently pleaded.  *See Galeana v. Lemongrass on Broadway*

*Corp.*, 120 F. Supp. 3d 306, 313 (S.D.N.Y. 2014) (stating that, "since the allegations in the

complaint must be 'well-pleaded,' we are required to examine whether those factual allegations,

if deemed true, establish liability" (citing *Finkel*, 577 F.3d at 84)); *see also Centra Developers*

*Ltd. v. The Jewish Press Inc.*, No. 16-CV-6737 (WFK) (LB), 2018 WL 1445574, at *1 (E.D.N.Y.

Mar. 23, 2018) (finding, despite defendant's default, that plaintiff was not entitled to recover damages on pleaded claims that failed as a matter of law); *Greathouse v. JHS Sec. Inc.*, No. 11cv7845 (PAE), 2012 WL 5185591, at \*5 (S.D.N.Y. Oct. 19, 2012) (finding, after a damages inquest upon the defendant's default, that the plaintiff was not entitled to damages on an inadequately pleaded FLSA retaliation claim), *vacated and remanded on other grounds*, 784 F.3d 105 (2d Cir. 2015).

Furthermore, although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))).  The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv1369 (LGS) (AJP), 2013 WL 1668206, at \*6 (S.D.N.Y. Apr. 18, 2013) (citations omitted), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013), although the plaintiff is entitled to all reasonable inferences in its favor based on the evidence submitted, *see U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at \*3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).  Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see*

*Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997),

and the Court may determine the adequacy of the plaintiff's damages claim based on its

submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081

(LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of

plaintiff's damages claim based solely on its submitted proofs where defendant neither

responded to plaintiff's submissions with respect to its claimed damages nor requested a

hearing).

While the Court may hold a hearing to assess the amount of damages that should be

awarded on default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as

necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves

the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v.*

*ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers,*

*Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given "much discretion" to determine whether an

inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)

(Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

**B.    Burden of Proof in Wage Cases, Where Defendants'**
        **Records Are Inadequate or Have Not Been Produced**

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he

performed work for which he was not properly compensated.'"  *Santillan v. Henao*, 822 F. Supp.

2d 284, 293-94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251,

*et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of

hours worked] themselves,'" *id.* at 294 (alteration in original) (quoting *Anderson*, 328 U.S. at

687), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id.* (quoting

*Anderson*, 328 U.S. at 687).  Employers, on the other hand, have a duty to maintain such records

pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to

discharge his or her burden of proof is, generally, to 'secur[e] the production of such records'

from the employer." *Id.* (alteration in original) (quoting *Anderson*, 328 U.S. at 687).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records

required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id.*  As a

result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on

recollection alone" to establish that he "performed work for which he was improperly

compensated." *Id.* at 293-94 (citing cases and finding, in default context, that plaintiff provided

a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration

containing information as to hours worked and rates of pay based on estimation and

recollection," even where the plaintiff's submission was "general and not detailed" (internal

quotation marks and citations omitted)).  "Moreover, in the absence of rebuttal by defendants . . .

[the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.*

(internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms.*

*Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (holding that where an employer fails to produce evidence

regarding the amount of work that the employee performed or evidence to negate "the

reasonableness of the inference to be drawn from the employee's evidence," the court may

"award damages to the employee, even though the result be only approximate" (quoting

*Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers

who fail to maintain the appropriate records 'bear the burden of proving that the complaining

employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

       **C.**     <u>**FLSA and NYLL Statutes of Limitations**</u>

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years. 29 U.S.C. § 255(a). Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "[A] defendant's default, in itself, may suffice to support a finding of wil[l]fulness." *Santillan*, 822 F. Supp. 2d at 297. The applicable limitations period for NYLL claims is six years. N.Y. Lab. Law § 663(3).

       **D.**     <u>**Damages Available Under the FLSA and<br>and the NYLL for Overtime Pay Violations**</u>

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week. 29 U.S.C. § 206(a). Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." *Id*. § 207(a)(1); *see also, e.g.*, *Chun Jie Yin v. Kim*, No. 07cv1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that "[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per week" (citations omitted)). A plaintiff with a successful minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding, these statutory amounts. *See Santillan*,

822 F. Supp. 2d at 293.  Commencing on July 24, 2009, the federal minimum wage was $7.25

per hour.  *See* 29 U.S.C. § 206(a)(1)(C).

Under the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages

owed, not just the statutory minimum wage for the hours worked."  *Chun Jie Yin*, 2008 WL

906736, at *4; *see also* N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover

full wages . . . accrued during the six years previous to the commencing of such action.").

Where, however, a plaintiff-employee was not owed more than the minimum wage, then the

statutory rates come into play.  For the periods relevant to this action, the statutory minimum

wage in New York State was the following:  as of January 1, 2007, $7.15 per hour; as of

December 31, 2013, $8.00 per hour; as of December 31, 2014, $8.75 per hour; as of

December 31, 2015, $9.00 per hour.  N.Y. Lab. Law § 652(1).  The NYLL, like the FLSA,

mandates payment at one and one-half times the regular normal rate for each hour worked by an

employee in excess of 40 hours per week.  12 N.Y.C.R.R. § 146-1.4.

Where an employee earns a fixed salary, "the regular hourly rate of pay, on which time

and a half must be paid, is computed by dividing the salary by the number of hours which the

salary is intended to compensate."  29 C.F.R. § 778.113(a).  Furthermore, courts have recognized

that, under the FLSA, there is a "rebuttable presumption that a weekly salary covers only the first

[40] hours, unless the parties have an alternate agreement."  *Pinovi v. FDD Enterps., Inc.*,

No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *see also Giles v.

City of New York*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee

regularly works 60 or more hours does not, without more, indicate that the employee's weekly

salary was intended to include the FLSA overtime premium for all hours in excess of 40.").

Courts in this District have extended this rebuttable presumption to apply under the NYLL, as

well as the FLSA.  *See, e.g.*, *Pinovi*, 2015 WL 4126872, at *4; *Pastor v. Alice Cleaners, Inc.*,

No. 16cv7264 (JLC), 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017); *Pinovi*, 2015 WL

4126872, at *4; *Amaya v. Superior Tile & Granite Corp.*, No. 10cv4525 (PGG), 2012 WL

130425, at *9 (S.D.N.Y. Jan. 17, 2012).  "[T]he employer can rebut the presumption by showing

an employer-employee agreement that the salary covers a different number of hours."  *Giles*,

41 F. Supp. 2d at 317.  Absent evidence that the employer and employee understood that the

fixed weekly salary included overtime hours, a court will find that the weekly salary covered

only the first 40 hours.  *See Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872,

at *4-5; *Amaya*, 2012 WL 130425, at *9; *cf. Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d

327, 335, 338 (S.D.N.Y. 2005) (finding that the FLSA's rebuttable presumption had been

overcome where the plaintiff conceded that his salary covered 50 hours of work).

        Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime

pay under both the FLSA and the [NYLL], [he or she] may not recover twice."  *Cao v. Wu Liang*

*Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y.

Sept. 30, 2010).  Instead, "[w]here a plaintiff is entitled to damages under both federal and state

wage law, a plaintiff may recover under the statute which provides the greatest amount of

damages."  *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3

(S.D.N.Y. May 2, 2011) (internal quotation marks and citation omitted), *report and*

*recommendation adopted*, 2011 WL 2038973 (May 24, 2011).  Accordingly, when calculating

minimum-wage damages, the higher of either the federal or the New York minimum wage

should be used for any period covered by both statutes.  *Id.*

### E.    <u>Spread-of-Hours Pay Pursuant to the NYLL</u>

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee is entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10 hours. 12 N.Y.C.R.R. § 142-2.4(a); *see also* N.Y. Lab. Law §§ 650, *et seq.* "Spread-of-hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than [10] hours." *See* 12 N.Y.C.R.R. § 146-1.6.

### F.    <u>Retaliation Claims Under the FLSA and the NYLL</u>

Under the FLSA, an employer who discharges an employee for complaining about FLSA violations "shall be liable for such legal or equitable relief as may be appropriate . . . including without limitation employment reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employee who prevails on a claim for retaliation under the FLSA may be awarded "back pay from the time of [his or her] discharge to the time of . . . trial" by determining the employee's "hourly wage rate and the duration of his [or her] loss period." *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 879-80 (2d Cir. 1988). If the employee has secured other employment in mitigation of damages, then the loss figure is offset by the employee's "interim earnings." *Id.* at 880.

Under the NYLL, when an employer discharges an employee for complaining about violations of the statute, the court may order "the compensation of lost wages, benefits, and other renumeration," as well as "the payment by the employer of reasonable costs, disbursements, and attorneys' fees." N.Y. Lab. Law § 740.

"The FLSA and NYLL retaliation provisions are 'nearly identical' and [are] analyzed under the same framework." *Lopez v. Advantage Plumbing & Mech. Corp.*, No. 15cv4507

(AJN), 2016 WL 1268274, at *1 (S.D.N.Y. Mar. 31, 2016) (citation omitted).  To plead a *prima facie* case of retaliation under either law, "[a] [p]laintiff must allege that, while employed by [the] [d]efendants, he complained to [them] about their violation of the [applicable statute] with regard to his wages, and was terminated as a direct result of that complaint." *Callender v. Panabori Food Corp.*, No. 16cv7152 (PKC) (DF), 2018 WL 4565876, *6 (S.D.N.Y. July 11, 2018), *report and recommendation adopted*, 2018 WL 3728931 (Aug. 6, 2018); *see also Lopez*, 2016 WL 1268274, at *1 (using term "causal connection" for final element of claim).  "[A] causal connection between an adverse action and a plaintiff's protected activity may be established through evidence of retaliatory animus directed against a plaintiff by the defendant, or by showing that the protected activity was closely followed in time by the adverse action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *see also Callender*, 2018 WL 4565876, at *6 ("[C]ourts may infer causation from the temporal proximity between a plaintiff's internal complaint and his termination . . . ." (citing *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 355 (S.D.N.Y. 2014))).

Along with back pay, courts have awarded additional damages to employees who demonstrate that they suffered emotional distress as the result of a retaliatory termination; awards for emotional distress, sometimes framed as punitive damages, have typically been in the range of $5,000 to $30,000 where the claimed injury may be described as "garden variety" emotional distress, and larger amounts have been awarded in egregious circumstances.  *See Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08cv6071 (SAS) (AJP), 2009 WL 289653, at *8 (S.D.N.Y. Jan. 30, 2009) (recommending award, under the NYLL, of $5,000 per plaintiff on retaliation claims, where plaintiffs alleged only that they were "upset" and in "low spirits" after being terminated), *report and recommendation adopted*, 2009 WL 513371 (Feb. 27, 2009); *see also*

14

*Perez v. Jasper Trading, Inc.*, No. 05cv1725 (ILG) (VVP), 2007 WL 4441062, at \*10 (E.D.N.Y.

Dec. 17, 2007) (adopting report and recommendation, which, after noting similarity of applicable

NYLL and FLSA provisions, recommended punitive damages ranging from $5,000 to $15,000

per plaintiff, where, in retaliation for plaintiffs' complaints, defendants had threatened to report

them to immigration authorities and sought to interfere with their new employment).

G.      **Liquidated Damages Pursuant to the FLSA and the NYLL**

In addition to allowing recovery for unpaid minimum wages and overtime compensation

(and the various types of damages for retaliation, as described above), the FLSA provides for the

recovery of liquidated damages.  *See* 29 U.S.C. § 216(b).  Under the statute, a plaintiff is entitled

to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime

compensation that the plaintiff was improperly denied, as well as an amount equal to any award

for retaliation, unless the employer demonstrates that it acted in good faith and had a reasonable

basis for believing that it had not violated the FLSA.  *See id.* (providing that plaintiff-employees

who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of

their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . .

. an additional equal amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that

an employer pay liquidated damages unless the employer demonstrates that he was acting in

"good faith" and "had reasonable grounds for believing" that he was not acting in violation of the

FLSA); *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)

(adopting report and recommendation).

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by

plain and substantial evidence, subjective good faith and objective reasonableness. . . .  The

burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the

norm, single damages the exception.'"  *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121

F.3d at 71 (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at *5;

*Yu G. Ke*, 595 F. Supp. 2d at 261; *see also* 29 U.S.C. § 260.

      The NYLL also provides for the recovery of liquidated damages, *see* N.Y. Lab. Law

§ 663(1), and while, prior to April 9, 2011, liquidated damages were awarded at the rate of

25 percent of the unpaid wages, an amendment to the NYLL, effective as of that date, increased

the award to a rate of 100 percent of unpaid wages.  *Wimbush v. L.I.C. Pet Transp. Inc.*,

No. 16cv5363 (PAE) (KNF), 2018 WL 3388296, at *4 (S.D.N.Y. July 12, 2018).  Employees

who make out a claim for retaliatory termination are also entitled to liquidated damages on any

back pay they are owed.  *Tackie v. Keff Enterps. LLC*, No. 14cv2074 (JPO), 2014 WL 4626229,

at *5 (S.D.N.Y. Sept. 16, 2014).  Although courts within this Circuit were previously split on the

question of whether a plaintiff could recover liquidated damages under both the FLSA and the

NYLL, *see Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016)

(summary order), the Second Circuit has since clarified that double recovery is not permitted, *id.*;

*Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (interpreting the NYLL and FLSA as "not

allowing duplicative liquidated damages for the same course of conduct," and holding that

"plaintiff should receive the larger of the two liquidated damages awards").

    **H.**    **New York State Wage Notice Requirements**

        **1.**    **Wage Statements**

      Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the

NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of
> wages, listing the following' information:  (1) the dates of work
> covered by that payment of wages; (2) the employee's name;
> (3) the employer's name, address, and telephone number;

> (4) the rate or rates of pay and basis thereof; (5) gross wages;
> (6) deductions; (7) allowances, if any, claimed as part of the
> minimum wage; and (8) net wages.

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (quoting N.Y. Lab.

Law § 195(3)); *see also Baltierra v. Advantage Pest Control Co.*, No. 14cv5917 (AJP), 2015 WL

5474093, at *10-11 (S.D.N.Y. Sept. 18, 2015).

For employer wage-statement violations occurring after February 27, 2015, the WTPA

entitles employees to recover statutory damages of "[$250.00] for each work day that the

violations occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-d).

Liquidated damages are not available to augment the statutory damages that may be

awarded under the WPTA for wage-statement violations.  *Java v. El Aguila Bar Restaurant

Corp.*, No. 16cv6691 (JLC), 2018 WL 1953186, at *13 n.18 (S.D.N.Y. Apr. 25, 2018).

## 2.    <u>Wage Notices</u>

In addition, the WTPA requires employers to provide a written wage notice "at the time

of hiring."  N.Y. Lab. Law § 195(1)(a).  The wage notice is required to be "in English and in the

language identified by each employee as the primary language of such employee," *id*., and must

contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any,
> claimed as part of the minimum wage, including tip, meal, or
> lodging allowances; (3) the regular pay day designated by the
> employer; (4) the employer's name; (5) any 'doing business as'
> names used by the employer; (6) the physical address of the
> employer's main office or principal place of business, and a
> mailing address if different; (7) the employer's telephone number;
> and (8) such other information as the commissioner deems material
> and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted) (quoting N.Y. Lab. Law § 195(1)(a)).

For employer violations of this requirement occurring after February 27, 2015, the WTPA entitles employees to recover statutory damages of "[$50.00] for each work day that the violations occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-b).

As with wage-statement violations, liquidated damages may not be awarded with respect to wage-notice violations under the WTPA.  *Java*, 2018 WL 1953186, at *13 n.18.

## I.     <u>Prejudgment Interest</u>

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved."  *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015).  Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation."  *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *8 (S.D.N.Y. Mar. 6, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 1314123 (Apr. 6, 2017).  Thus, a plaintiff who recovers liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her FLSA damages.  *See, e.g.*, *id.*; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015))).  As a result, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA."  *Andrade v. 168 First Ave Restaurant*

*Ltd.*, No. 14cv8268 (JPO) (AJP), 2016 WL 3141567, at *9 n.7 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016).

Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL is also entitled to prejudgment interest. *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp., Inc.*, No. 15cv0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). Under the state law, though, "[p]rejudgment interest is calculated . . . [only] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y.C.P.L.R. §§ 5001, 5004. As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest[]":

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

*Alvarez v. 215 N. Ave. Corp.*, No. 13cv0049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation). It is within the Court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'" *Id.* (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

**J.**     **Joint and Several Liability of "Employers" Under the FLSA and the NYLL**

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to

include] 'any person acting directly or indirectly in the interest of an employer in relation to an

employee.'"  *Doo Nam Yang*, 427 F. Supp. 2d at 342-43 (quoting 29 U.S.C. § 203(d)).  "The

definition of 'employer' is similarly expansive under New York law, encompassing any 'person

employing any [employee].'"  *Id*. (quoting N.Y. Lab. Law §§ 2(6)).  To determine whether a

party qualifies as an "employer" under both statutes' "generous definitions," the relevant inquiry

is "whether the alleged employer possessed the power to control the workers in question, . . .

with an eye to the economic reality presented by the facts of each case."  *Id*. (quoting *Herman v.*

*RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate

various factors, none of which, individually, is dispositive.  *Id.*  These factors include "'whether

the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records.'"  *Id.* (quoting *Herman,* 172 F.3d

at 139).  Further, "[t]he overwhelming weight of authority is that a corporate officer with

operational control of a corporation's covered enterprise is an employer along with the

corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages."  *Id*.

(internal quotation marks and citation omitted) (finding defendants jointly and severally liable

under both the FLSA and the NYLL).

**K.**     **Attorneys' Fees and Costs**

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her

reasonable attorney's fees and costs."  *Najnin*, 2015 WL 6125436, at *4; s*ee* 29 U.S.C. § 216(b);

N.Y. Lab. Law § 198(1-a).  The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award.  *See Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008).  As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008))).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *see New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

For purposes of the lodestar, an attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n.11.  Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987); *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-7 (2d Cir. 2006).  Paralegal services are includable in an award of attorneys' fees, and the reasonableness of paralegal fees are also determined by reference to the prevailing hourly rate in the relevant community.  *See Marisol A.  ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381,

21

386 (S.D.N.Y. 2000) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415-16 (2d Cir. 1989)).

In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

As for the time component of the lodestar, an attorney's stated number of hours should be reduced by the court where it is greater than required to litigate the case effectively, *see Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (holding that time component should not reflect excessive hours), or where the attorney's proffered time records are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed or the time expended, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10cv05256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (finding that vague time records were insufficient to substantiate claimed expenditures of time; collecting cases). In determining whether an excessive amount of time was expended on the matter, the Court may also consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), and whether the work was complicated or straightforward, *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*,

No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (considering "the straightforward nature of the work performed [and] the relative simplicity of the issues involved" (internal quotation marks and citations omitted)).

As the party seeking attorneys' fees bears the burden of demonstrating that its claimed fees are reasonable, *Thai-Lao Lignite (Thailand)*, 2012 WL 5816878, at *3 (citations omitted), it must submit, in support of its request for fees, contemporaneous time records that "specify, for each [timekeeper], the date, the hours expended, and the nature of the work done," *id.* (quoting *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)) (internal quotation marks omitted). Where an attorney's time records are inadequate to enable the court to determine whether the time expended was reasonable, a percentage reduction may be applied as a "practical means of trimming fat" from a fee application. *N.Y. State Ass'n for Retarded Children*, 711 F.2d at 1146.

In addition to the lodestar amount, attorneys' fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). These expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (July 28, 2015).

## II.   PLAINTIFFS' DAMAGES CLAIMS

As a threshold matter, in the consideration of damages, this Court finds Plaintiffs' submissions to be sufficient to meet their burden of proof to establish, to a reasonable certainty,

their applicable overtime, spread-of-hours, and statutory damages, such that a hearing on damages is not required.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary).  As noted above, in the context of a default, where the defendant has neither provided any employment records, nor otherwise rebutted the plaintiff's damages claims, it is sufficient for a plaintiff to rely on his "recollection alone" to establish the hours he worked and the rates he should have been paid.  *Santillan*, 822 F. Supp. 2d at 294 (internal quotation marks and citations omitted).  In this case, this Court accepts as true, for purposes of this inquest, the well-pleaded factual allegations presented in the Second Amended Complaint and Plaintiffs' signed Declarations, which set out Plaintiffs' recollections regarding the hours they worked and the rates of pay they earned for that work. This Court finds that the Second Amended Complaint and Plaintiffs' Declarations together contain adequate information to allow for a reasonable assessment of damages.

In addition, this Court has carefully reviewed the damages chart provided with the attorney Declaration that Plaintiffs submitted in connection with their motion for a default judgment.  (*See* Dkt. 83-15 ("Damages Chart").)  The Damages Chart details the amounts Plaintiffs were actually paid per week ("Weekly Salary"), the hourly rates derived from their weekly salaries, the lawful overtime ("OT") rates applicable to the hours they working in excess of 40 per week, the amounts of overtime pay that Plaintiffs were owed per week, the corresponding liquidated damages under the NYLL, and Plaintiffs' total damages per pay period. (*Id.*)  The Damages Chart also details the interest Plaintiffs seek, as well as De La Cruz's proposed damages for his retaliation claim.  (*Id.*)

This Court finds the Damages Chart to be detailed and largely accurate.  This Court notes, however, that it has not relied on the Damages Chart when it is in conflict with the signed

Declarations of the Plaintiffs themselves (*see infra*, at n.6), and, given the applicable statute of limitations in this case, the Court has disregarded any calculations in the Chart based on periods of employment prior to June 10, 2010 (*see infra*, at nn.4-5). Each individual plaintiff's claims for damages are addressed in detail below.

A. **Plaintiff De La Cruz**

1. **Unpaid Overtime Hours**

As set out above, De La Cruz alleges that, throughout his employment at Trejo Liquors, he was paid a fixed weekly salary that gradually increased from $200 in 1992 to $550 in 2016. (*See* De La Cruz Decl. ¶¶ 5-6.) This Court takes that allegation as true, as well as the alleged fact that De La Cruz worked 56 hours per week, with the exception of two 80-hour weeks in June 2015. (*Id.* ¶¶ 9-12.) Thus, this Court concludes that, after the first 40 hours, De La Cruz worked 16 hours of overtime per week for the majority of his employment and 40 hours of overtime for two weeks in June 2015. Given the absence of an agreement between the parties that De La Cruz's weekly salary would cover the full hours that he worked each week, this Court presumes that De La Cruz's weekly salary covered only the first 40 hours of his work, *see Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9, which yields a base hourly rate ranging from $8.75 on June 10, 2010, the earliest date from which De La Cruz can recover,[4] to $13.75 at the time of his termination in 2016.

As these base hourly rates were, for all relevant periods, more than the applicable federal and state minimum wage rates (*see* Discussion, *supra*, at Section I(D)), De La Cruz was entitled

---

[4] Although De La Cruz began working at Trejo Liquors in 1992, the earliest date from which he can recover damages, in accordance with the NYLL's six-year statute of limitations, is June 10, 2010 (*i.e.*, six years prior to the date Plaintiffs filed their Complaint). N.Y. Lab. Law § 663(3). Therefore, given that De La Cruz was employed until February 4, 2016, the relevant period for assessing his damages runs from June 10, 2010 to February 4, 2016.

to overtime pay (*i.e.*, one and one-half times the base rate pursuant to the NYLL, *see* 12 N.Y.C.R.R. § 142-2.2) at an hourly rate ranging from $13.125, at the beginning of the limitations period in 2010, to $20.625 in 2016, for the hours he worked in excess of 40 per week. More specifically, based on the wages that he states he received at different points during the relevant period, De La Cruz was entitled to overtime pay at the following rates:

| Year | Weekly Salary | Base Hourly Rate (Weekly Salary ÷ 40 hours) | Overtime Rate (Base Hourly Rate x 1.5) |
|---|---|---|---|
| 2010 | $350.00 | $8.75/hour | $13.125/hour |
| 2011 | $375.00 | $9.375/hour | $14.063/hour |
| 2012 | $400.00 | $10.00/hour | $15.00/hour |
| 2013 | $450.00 | $11.25/hour | $16.875/hour |
| 2014 | $475.00 | $11.875/hour | $17.813/hour |
| 2015 | $500.00 | $12.50/hour | $18.75/hour |
| 2016 | $550.00 | $13.75/hour | $20.625/hour |

For the approximately 30 weeks in 2010 for which De La Cruz can recover, he is owed $6,119.40 (*i.e.*, $13.125/hour x 16 hours/week x 29.14 weeks). For 2011, De La Cruz is owed $11,700.42 (*i.e.*, $14.063/hour x 16 hours/week x 52 weeks). For 2012, De La Cruz is owed $12,480.00 (*i.e.*, $15.00/hour x 16 hours/week x 52 weeks). For 2013, De La Cruz is owed $14,040.00 (*i.e.*, $16.875/hour x 16 hours/week x 52 weeks). For 2014, De La Cruz is owed $14,820.42 (*i.e.*, $17.813/hour x 16 hours/week x 52 weeks). For the two weeks in June 2015 during which De La Cruz worked 40 hours of overtime per week, he is owed $1,500.00 (*i.e.*, $18.75/hour x 40 hours/week x 2 weeks). For all other weeks in 2015, De La Cruz is owed $15,000.00 (*i.e.*, $18.75/hour x 16 hours/week x 50 weeks). For the approximately five weeks that he worked in 2016, De La Cruz is owed $1,603.80 (*i.e.*, $20.625/hour x 16 hours/week x 4.86 weeks).

In total, this results in an underpayment of **$77,264.04** in overtime wages to De La Cruz, and I recommend that De La Cruz be awarded this amount, as a component part of his compensatory damages.[5]

### 2. **Spread-of-Hours Compensation**

As discussed above, De La Cruz asserted that, for two weeks in June 2015, he worked 13 hours per day Monday through Thursday and 14 hours per day on Friday and Saturday. (*See* De La Cruz Decl. ¶¶ 10-11.)  Therefore, under the NYLL, De La Cruz is entitled to one additional hour's pay at the statutory minimum-wage rate for each day in this period that he worked.  *See* 12 N.Y.C.R.R. § 142-2.4.  For the period from June 1, 2015 to June 13, 2015, New York's minimum wage was $8.75 per hour.  (*See* Discussion, *supra*, at Section I(D).)  Given that he worked 12 days during this period, De La Cruz is entitled to spread-of-hours damages in the amount of **$105.00** ($8.75/day x 12 days), and I recommend that he receive this amount as an additional part of a compensatory damages award.

### 3. **Retaliation**

De La Cruz contends that Trejo terminated his employment in retaliation for his complaints about Defendants' failure to pay overtime in violation of the FLSA and the NYLL (*see* 2d Am. Compl. ¶¶ 29-35), and that the termination occurred "shortly after [his] final complaint, on or about February 4, 2016" (De La Cruz Decl. ¶ 22).  On his retaliation claim, De La Cruz seeks to recover lost compensation in addition to liquidated and emotional-distress damages.  (*See* Harman Decl. ¶ 107.)

---

[5] This total is not in accord with De La Cruz's proposed damages in the Damages Chart because the Chart includes dates prior to June 10, 2010.  (*See* Damages Chart.)

Even accepting Plaintiffs' factual assertions as true and "draw[ing] all reasonable inferences in [their] favor," *Finkel*, 577 F.3d at 84, however, this Court finds that De La Cruz has not made out a *prima facie* case of retaliation, as the allegations in the Complaint are insufficient to give rise to an inference that his termination was a "direct result" of his complaints to Trejo regarding a lack of overtime pay. As noted above, a causal connection between a protected activity and an employee's termination may be inferred from either temporal proximity or a showing of retaliatory animus directed at the plaintiff. *See Mullins*, 626 F.3d at 53. In this case, Plaintiffs' allegations are not capable of establishing either.

First, De La Cruz has not adequately stated that the termination of his employment was temporally linked to his having complained about an FLSA or NYLL violation. De La Cruz states that he complained to Trejo about her not paying him for his overtime hours "[t]hroughout [his] employment" (De La Cruz Decl. ¶ 21), and then adds only that Trejo fired him "[s]hortly after" his "final" complaint (*id.* ¶ 22). Even apart from the fact that the phrase "shortly after" is too vague for this Court to have confidence as to the timing of events, *see Callender*, 2018 WL 4565876, *6 (noting that, where plaintiff had "not specified even the approximate date when he allegedly made his complaint, . . . this Court ha[d] no information as to whether he was fired close in time, or substantially after the complaint was made"), Plaintiff's allegation that he had repeatedly made complaints about his pay, "[t]hroughout" the period when he worked for Defendants, undermines any inference of a causal link between his complaints and his termination, *see Bazignan v. Team Castle Hill Corp.*, No. 13cv8382 (PAC), 2015 WL 1000034, at *3 (S.D.N.Y. Mar. 5, 2015) ("Plaintiff complained each day of his employment beginning his second week of work, yet Defendants continued to employ him for approximately four additional

months. Plaintiff's allegations fail to demonstrate how Plaintiff's termination was triggered by complaints he made daily for a substantial amount of time.").

Second, De La Cruz's allegations do not reflect that Trejo was motivated by a "retaliatory animus" in terminating his employment.  At most, De La Cruz asserts that Trejo's stated reasons for firing him were false.  In this regard, he states that Trejo "told [him] that she was terminating [him] because there was missing inventory, implying that she believed that [he] had been stealing from the store" (De La Cruz Decl. ¶ 23), but that she "did not show [him] any evidence" that he had "stole[n] anything," and, in fact, he had not (*id.* ¶ 25).  Separately, De La Cruz states that Trejo told him that "she had to terminate [him] because work was slow" (*id.* ¶ 26), and yet, "[a]fter [his] termination, [he] learned that [] Trejo had hired two additional employees anyway" (*id.* ¶ 28).  These allegations may suggest that Trejo's stated reasons for firing De La Cruz were pretextual, but, without more, they do not allow for an inference that the real reason for his termination was that he had complained about not receiving overtime pay.  *See Bazignan*, 2015 WL 1000034, at *3 (finding, upon a damages inquest, that, "[a]lthough Plaintiff argue[d] that Defendants' proffered reason for Plaintiff's termination [was] pretextual, . . . the dearth of facts linking the termination to the complaints render[ed] Plaintiff's retaliation allegations conclusory" (internal citations omitted), and thus denying damages for alleged retaliation).

As De La Cruz's allegations, even if taken as true for purposes of this inquest, cannot suffice to support a claim of retaliatory discharge, I recommend that De La Cruz not be awarded any damages on that claim, under either the FLSA or the NYLL.

### 4.   **Liquidated Damages**

As discussed above, both the FLSA and the NYLL provide for the recovery of liquidated damages.  Indeed, both statutes mandate that the Court award liquidated damages to a prevailing

plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law.  (*See* Discussion, *supra*, at Section I(G).)  Here, given Defendants' default, they have not met their burden of proving that they acted in good faith, *see Galeana*, 120 F. Supp. 3d at 317, and thus liquidated damages are available under the provisions of both statutes, 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  Plaintiffs specifically seek liquidated damages under the NYLL (*see* Harman Decl. ¶ 5), as, given the higher applicable overtime rate and the longer statute of limitations, this would result in a higher liquidated damages award than if the FLSA were applied, *see Morales v. Mw Bronx, Inc.*, No. 15cv6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).  As Plaintiffs are entitled to recover under whichever statute would yield the greatest recovery, *see, e.g.*, *Wicaksono*, 2011 WL 2022644, at *3, I recommend that liquidated damages be awarded, as requested, under the NYLL.

For the period from June 10, 2010 to April 8, 2011 – in other words, for the period that De La Cruz worked prior to April 9, 2011, when amendments to the NYLL increased the available liquidated damages from 25 to 100 percent of unpaid wages (*see* N.Y. Lab. Law § 663(1)) – he is due $9,269.51 in unpaid overtime wages (*i.e.*, $6,119.40 (for overtime in 2010) + ($14.063/hour x 16 hours/week x 14 weeks (for overtime from January through April 8, 2011)).  Thus, De La Cruz's liquidated damages for that period calculate to $2,317.38 ($9,269.51 x .25).  With respect to the period from April 9, 2011 forward (April 9, 2011 to February 4, 2016), De La Cruz is due $67,994.52 in unpaid overtime wages (*i.e.*, ($14.063/hour x 16 hours/week x 38 weeks (for overtime from April 9 to December 31, 2011)) + $12,480.00 (for overtime in 2012) + $14,040.00 (for overtime in 2013) + $14,820.42 (for overtime in 2014) + $16,500.00 (for overtime in 2015) + $1,603.80 (for overtime in 2016)), and

he is also due $105.00 in unpaid spread-of-hours pay, for a total of $68,099.52.  De La Cruz's

liquidated damages for this latter period thus calculate to $68,099.52 ($68,099.52 x 1.0).

In all, and in accordance with these calculations, I recommend that De La Cruz be

awarded **$70,416.90** in liquidated damages.

### 5.   <u>Statutory Damages</u>

De La Cruz contends that Defendants failed to provide him with required wage

statements and wage notices in violation of the WTPA, and that he is therefore entitled to

additional statutory damages under the statute.  (2d Am. Compl. ¶¶ 81-86.)

With respect to violations that occurred after February 27, 2015, De La Cruz is entitled to

recover $250 for each work day on which Defendants failed to provide him with proper wage

statements, capped at $5,000.  N.Y. Lab. Law § 198(1-d).  Accepting as true De La Cruz's

allegations that he did not receive any wage statements in 2015, which included more than 20

work days, he is entitled to the maximum of $5,000.00 in statutory damages for wage-statement

violations.  For the same period, De La Cruz may recover $50 for each work day on which

Defendants failed to provide him with proper wage notices, also capped at $5,000.

*See* N.Y. Lab. Law § 198(1-b).  Accepting as true De La Cruz's allegations that he did not

receive any wage notices in 2015, which included more than 100 work days during the relevant

period, he is entitled to the maximum of $5,000.00 in statutory damages for wage-notice

violations.

I therefore recommend that De La Cruz be awarded **$10,000.00** in statutory damages

under the WTPA.

### 6.        **Prejudgment Interest**

As noted above, the NYLL provides that a plaintiff may recover both liquidated damages and prejudgment interest on his or her underlying damages.  *See Hernandez*, 2016 WL 3248493, at *35; *Castillo*, 2016 WL 1417848, at *3.  While "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA," *Andrade*, 2016 WL 3141567, at *9 n.7, where, as here, a plaintiff is entitled to liquidated damages only pursuant to the NYLL, the plaintiff is "eligible for an award of prejudgment interest on the full . . . damages arising out of his . . . wage claims," *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14cv10234 (JGK) (JLC), 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258 (Nov. 21, 2016).  As set out above, prejudgment interest on damages under the NYLL is awarded at a rate of nine percent per annum, *Najnin*, 2015 WL 6125436, at *4; N.Y.C.P.L.R. § 5004, and such interest may be calculated from either the "earliest ascertainable date the cause of action existed" or "from a single reasonable intermediate date," where damages were incurred at various times, N.Y.C.P.L.R. § 5001(b).

De La Cruz is entitled to prejudgment interest on his damages for unpaid overtime and spread-of-hours pay.  As each of the claims for which these damages are sought accrued at different times, interest must be calculated separately for each.

With respect to De La Cruz's $77,264.04 in unpaid overtime wages, this Court calculates his prejudgment interest from the midpoint date of the period of employment for which he can recover damages (April 7, 2013), to the date of Plaintiffs' damages submissions (October 18, 2018).  Applying the prejudgment rate of nine percent per annum to this principal amount yields prejudgment interest in the amount of $38,483.84 ($77,264.04 x .09 x (2020/365)).  Interest on

De La Cruz's spread-of-hours claim is calculated from the midpoint date of June 7, 2015 to October 18, 2018. This results in a figure of $31.82 ($105.00 x .09 x (1229/365)). In total, I recommend that De La Cruz be awarded **$38,515.66** in prejudgment interest on damages arising out of his wage claims, up to the date of Plaintiffs' damages submissions, with additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from October 18, 2018 through the date of final judgment.

Overall, I recommend that De La Cruz be awarded a total of **$157,785.94** in unpaid overtime compensation, spread-of-hours pay, liquidated damages, and WTPA statutory damages, plus **$38,515.66** in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court.

### B.     **Plaintiff Ramos**

#### 1.     **Unpaid Overtime Hours**

As set out above, Ramos alleges that, throughout his employment at Trejo Liquors, he was paid a fixed weekly salary that gradually increased from $220 in 2002 to $450 in 2014. (*See* Ramos Decl. ¶¶ 5-6.) This Court takes that allegation as true, as well as the alleged fact that Ramos worked 44 hours per week. (*Id.* ¶ 9.) Thus, this Court concludes that, after the first 40 hours, Ramos worked four hours of overtime per week. Given the absence of an agreement between the parties that Ramos's weekly salary would cover the full hours he worked each week, this Court presumes that his weekly salary covered only the first 40 hours of his work, *see Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL

130425, at *9, which yields a base hourly rate ranging from $9.50 on June 10, 2010, the earliest

date from which Ramos can recover,[6] to $11.25 at the time of his resignation in 2015.

Using that base hourly rate, which, for all relevant periods, was more than the applicable

federal and state minimum wage rates, Ramos was entitled to overtime pay (*i.e.*, one and one-

half times the base rate pursuant to the NYLL, *see* 12 N.Y.C.R.R. § 142-2.2) at an hourly rate

ranging from $14.25, at the beginning of the limitations period in 2010, to $16.875 in 2015, for

the four hours of overtime he worked each week.  More specifically, based on the wages that he

states he received at different points during the relevant period, Ramos was entitled to overtime

pay at the following rates:[7]

| Year | Weekly Salary | Base Hourly Rate (Weekly Salary ÷ 40 hours) | Overtime Rate (Base Hourly Rate x 1.5) |
|---|---|---|---|
| 2010 | $380.00 | $9.50/hour | $14.25/hour |
| 2011 | $400.00 | $10.00/hour | $15.00/hour |
| 2012 | $420.00 | $10.50/hour | $15.75/hour |
| 2013 | $440.00 | $11.00/hour | $16.50/hour |
| 2014 | $450.00 | $11.25/hour | $16.875/hour |
| 2015 | $450.00 | $11.25/hour | $16.875/hour |

For the approximately 30 weeks in 2010 for which Ramos can recover, he is owed

$1,660.98 (*i.e.*, $14.25/hour x 4 hours/week x 29.14 weeks).  For 2011, Ramos is owed

$3,120.00 ($15.00/hour x 4 hours/week x 52 weeks).  For 2012, Ramos is owed $3,276.00

---

[6] Although Ramos began working at Trejo Liquors in 2002, the earliest date from which he can recover damages, in accordance with the NYLL's six-year statute of limitations, is June 10, 2010 (*i.e.*, six years prior to the date Plaintiffs filed their Complaint).  N.Y. Lab. Law § 663(3). Therefore, given that Ramos was employed until August 20, 2015, the period for assessing his damages runs from June 10, 2010 to August 20, 2015.

[7] Although the Damages Chart indicates that, for isolated segments during the Christmas holiday period of certain years, Ramos was paid at a slightly higher rate than his rate for the year as a whole (*see, e.g.*, Damages Chart (purporting to show Ramos's weekly salary from December 26, 2010 to January 1, 2011)), the Court has instead relied on the weekly salary amounts described in Ramos's Declaration, which makes no mention of these adjusted holiday rates (*see* Ramos Decl. ¶ 6).

(*i.e.*, $15.75/hour x 4 hours/week x 52 weeks).  For 2013, Ramos is owed $3,432.00 (*i.e.*, $16.50/hour x 4 hours/week x 52 weeks).  For 2014 through August 20, 2015, Ramos is owed $5,737.50 (*i.e.*, $16.875/hour x 4 hours/week x 85 weeks).

In total, this amounts to an underpayment of **$17,226.48** in overtime wages to Ramos, and I recommend that Ramos be awarded this sum.[8]

## 2.    Liquidated Damages

With respect to the period of Ramos's employment prior to April 9, 2011 (when available liquidated damages under the NYLL increased), Ramos is due $2,500.98 in unpaid overtime wages (*i.e.*, $1,660.98 (for overtime in 2010) + ($15.00/hour x 4 hours/week x 14 weeks (for overtime from January through April 8, 2011))).  For that period, Ramos is therefore entitled to $625.25 in liquidated damages (*i.e.*, $2,500.98 x .25).  With respect to the period from April 9, 2011 to August 20, 2015, Ramos is due $14,725.50 in unpaid overtime wages (*i.e.* ($15.00/hour x 4 hours/week x 38 weeks (for overtime from April 9 to December 31, 2011)) + $3,276.00 (for overtime in 2012) + $3,432.00 (for overtime in 2013) + $5,737.50 (for overtime in 2014 and 2015)).  Ramos's liquidated damages for that later period calculate to $14,725.50 ($14,725.50 x 1.0).

In total, Ramos is entitled to **$15,350.75** in liquidated damages for unpaid wages under the NYLL, and I recommend that this amount also be awarded to him.[9]

---

[8] As with De La Cruz, this total is not in accord with Ramos's proposed damages in the Damages Chart because, for both Plaintiffs, the Chart includes dates prior to June 10, 2010.  (*See* Damages Chart.)

[9] In this instance, this total differs from Plaintiffs' damages calculations, both because, as already noted, Plaintiffs' Damages Chart includes dates prior to the earliest date of recovery under the statute of limitations, and also because the Chart does not take into account the lower amount of liquidated damages that was available, under the NYLL, prior to the April 9, 2011 amendments.  (*See* Damages Chart.)

### 3.   **Statutory Damages**

Ramos is also entitled to recover for wage-statement and wage-notice violations under the WTPA.  For purposes of this inquest, this Court accepts as true Ramos's contention that he did not receive any wage statements between February 27, 2015 and August 20, 2015.  As he is entitled to recover $250 for each work day during that period for which Defendants failed to provide him with proper wage statements, capped at $5,000, *see* N.Y. Lab. Law § 198(1-d), and as that period included more than 20 work days, he is entitled to the maximum of $5,000.00 in statutory damages for wage-statement violations.  This Court similarly accepts Ramos's contention that, for the same period, he did not receive any wage notices.  As, for that period, he is entitled to recover $50 for each work day on which Defendants failed to provide him with proper wage notices, capped at $5,000, *see* N.Y. Lab. Law § 198(1-b), and as that period included more than 100 work days, he is also entitled to the maximum of $5,000.00 in statutory damages for wage-notice violations.

Accordingly, I recommend that Ramos be awarded **$10,000.00** in statutory damages under the WTPA for Defendants' failure to provide him with required wage statements and wage notices.

### 4.   **Prejudgment Interest**

Ramos is entitled to prejudgment interest on his unpaid overtime wages, which total $17,226.48.  Calculating interest from the midpoint date of January 13, 2013 to October 18, 2018, the date of Plaintiffs' damages submissions, and applying a rate of nine percent per annum to this principal amount yields $8,937.00 ($17,226.48 x .09 x (2104/365)) in prejudgment interest.  Accordingly, I recommend that Ramos be awarded **$8,937.00** in prejudgment interest on damages arising out of his overtime claims, up to the date of Plaintiffs' damages submissions,

with additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from October 18, 2018 through the date of final judgment.

Overall, I recommend that Ramos be awarded a total of **$42,577.23** in unpaid overtime compensation, liquidated damages, and WTPA statutory damages, plus **$8,937.00** in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court.

### C.   <u>Joint and Several Liability</u>

As set out above, all of a worker's "employers" – *i.e.*, all those who "possessed the power to control the worker[] in question . . . with an eye to the economic reality presented by the facts of each case," *Doo Nam Yang*, 427 F. Supp. 2d at 342 – may be held liable for violations of the FLSA and the NYLL. *Id.* In this case, Plaintiffs' well-pleaded allegations are sufficient to support a finding that, during the time that Plaintiffs worked at Trejo Liquors, Trejo had control of the "economic reality" of Plaintiffs' employment, such that both TLI (as Plaintiffs' corporate employer) and Trejo, herself, should be considered Plaintiffs' "employers" under the statutes.

In particular, Plaintiffs have alleged that, following her husband's death in 2015, Trejo "took over operations of the business," "made hiring and hiring decisions, gave workers their pay," and "was the only 'management' level employee at Trejo Liquors." (*See* 2d Am. Compl. ¶¶ 51-55.) Taking these allegations as true upon Defendants' default, it would be appropriate for the Court to hold Trejo jointly and severally liable with TLI for the violations described herein.

## III.   <u>ATTORNEYS' FEES AND COSTS</u>

Plaintiffs seek $40,960.96 in attorneys' fees for 164 hours of work performed by counsel in connection with this action. (*See* Dkt. 83-16 ("Billing List").) Plaintiffs also seek litigation costs in the amount of $603.18. (*See* Dkt. 83-17 ("Expenses and Costs").) For the reasons that

follow, I recommend that attorneys' fees be awarded in the reduced amount of $30,832.87, and that litigation costs be awarded in the reduced amount of $400.

### A.      **Reasonable Hourly Rates**

Plaintiffs were represented in this case by the Harmon Firm, LLP (the "Harmon Firm"), primarily by Harman, the firm's managing partner, who has been practicing employment law for approximately 14 years (*see* Harman Decl. ¶¶ 66, 71), and Edgar M. Rivera, Esq. ("Rivera"), a junior associate who graduated law school in 2014 (barely two years before this suit was commenced), and joined the Harman Firm that same year (*id*. ¶¶ 74, 75).  Another associate, Owen H. Laird, Esq. ("Laird"), who graduated law school in 2012 (*id*. ¶¶ 78, 79), contributed an extremely small amount of time (a total of 0.80 hours) to the case (*see* Billing List (time entries for 2/13/17, 10/4/17)).  Plaintiffs seek recovery for Harmon's time at the rate of $450 per hour (*id*. ¶ 66), and for both Rivera's and Laird's time at the rate of $275 per hour (*id*. ¶ 73).

In addition, the Harmon Firm mainly assigned one paralegal to the case, Lev Craig ("Craig").  (*Id*. ¶¶ 82-86.)  Two other paralegals, Yarelyn Mena ("Mena") and Leah Kessler ("Kessler"), also worked on the case (*see id*. ¶¶ 87-99), but, based on the records presented, they each contributed only modest amounts of time – 1.45 hours for Mena (*see* Billing List (time entries for 4/8/16, 4/13/16, 6/2/16, 6/10/16)), and 1.35 hours for Kessler (*see id*. (time entries for 2/5/18, 2/27/18, 3/2/18, 3/14/18)).  Plaintiffs seek to recover for each of the three paralegals' time at the rate of $95 per hour.  (Harman Decl. ¶ 82.)

"Courts in this District have generally found that fees ranging from $200 to $450 are appropriate for experienced litigators in employment and wage-and-hour cases."  *Siegel v. Bloomberg L.P.*, No. 13cv1351 (DF), 2016 WL 1211849, at *6 (S.D.N.Y. Mar. 22, 2016) (citations omitted).  For partners or heads of small law firms practicing in this area, the Court has

usually approved hourly rates in the $300 to $450 range. *See, e.g.*, *Almanzar v. 1342 St. Nicholas Avenue Restaurant Corp.*, No. 14cv7850 (VEC) (DF), 2016 WL 8650464 at *19 (S.D.N.Y., Nov. 7, 2016) (recommending approval of rate of $450/hour for founding attorney of small firm specializing in wage-and-hour law), *report and recommendation adopted*, 2017 WL 1194682 (Mar. 30, 2017); *see also Surdu v. Madison Global, LLC*, No. 15cv6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar 23, 2018) ("Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced attorneys or partners in FLSA and NYLL wage-and-hour cases." (collecting cases)).  In light of the rates that have generally been held reasonable in this market, for this type of case, and based on Harmon's years of experience in the employment field, I recommend that his requested rate of $450 per hour be approved as reasonable.

Mid-level associates, meaning those "with at least four years of experience . . .[,] are typically awarded fees of about $200 to $275 per hour" in wage-and-hour cases.  *Siegel*, 2016 WL 1211849, at *6 (citations omitted); *accord Soto v. Los Corbaticas Deli Grocery II Corp.*, No. 18cv3602 (JGK) (JLC), 2018 WL 4844018, at *8 (S.D.N.Y. Oct. 5, 2018) (citations omitted), *report and recommendation adopted*, 2018 WL 6173713 (Nov. 23, 2018).  As for more junior associates working on FLSA and NYLL cases, the rates that have been approved by this Court have typically been lower – in the range of $125 to $200 per hour.  *See, e.g.*, *Poon v. Apple NYC Corp.*, No. 17cv9647 (RA) (GWG), 2019 WL 75674, at *13 (S.D.N.Y. Jan. 2, 2019) (recommending reduced rate of $200 per hour for third-year associate) (collecting cases), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 64256 (Apr. 15, 2019); *see also Kim v. 511 E. 5th St., LLC*, No. 12cv8096 (JCF), 2016 WL 6833928, at *4 (S.D.N.Y. Nov. 7, 2016)

(finding rates of $125 per hour for first-year associates, and $175 per hour for third-year associates to be reasonable).

As the rates that have been requested for Rivera and Laird are thus somewhat higher than the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable experience," *Blum*, 465 U.S. at 894 n.11, I recommend that those requested rates be reduced. Specifically, given that Rivera was only second-year associate when he began work on this case, I recommend that his hourly rate be reduced to $200 per hour. I also recommend that, in accordance with custom in this Court, Rivera's rates for his travel time to and from Court (*see* Billing List (time entries for 1/26/18)) be reduced by 50 percent, to $100 per hour. *See Brig v. Port Auth. Trans Hudson*, No. 12cv5371 (RPP), 2014 WL 1318345, at *4 (S.D.N.Y. Mar. 28, 2014); *Davis v. City of New York*, No. 10cv699 (SAS), 2011 WL 4946243, at *6 (S.D.N.Y. Oct. 18, 2011); *LV v. N.Y. City. Dep't of Educ.*, 700 F. Supp. 2d 510, 524 (S.D.N.Y. 2010). As for Laird, I further recommend that his rate be reduced to $225 per hour (for the work he performed on the case in 2017), to bring it into line with rates that have been commonly approved for associates at or about his level. *See, e.g.*, *Soto*, 2018 WL 4844018, at *8 (in case filed in 2018, recommending rate of $225 per hour for associate who graduated from law school in 2012).

As for the paralegals, Craig, Kessler, and Mena, this Court finds their requested hourly rate of $95.00 per hour to be consistent with paralegal rates that have generally been approved in this District, *see, e.g.*, *Sevilla v. Nekasa Inc.*, No. 16cv2368 (AJP), 2017 WL 1185572, at *6 (S.D.N.Y. Mar. 30, 2017) (collecting cases), and that their time should therefore be compensated at that rate.

### B.     Reasonable Hours

In support of Plaintiffs' request for attorneys' fees, the Harman Firm has provided the
Court with a copy of time records that purport to show the billable hours expended by counsel in
connection with this action.  (*See* Billing List.)  While most of the entries appear, on their face, to
describe reasonable tasks that were performed within a reasonable amount of time, there are
nonetheless some problematic aspects to counsel's time records that make it difficult for this
Court to review the entirety of the submission for reasonableness, and that warrant at least a
modest reduction in the stated hours for purposes of the lodestar calculation.

First, a few of the tasks described in the time records do not appear to relate to this
litigation, and, if they do relate to the case, it is certainly not obvious how.  For example, four
separate time entries shown for April 2016, prior to the commencement of the litigation – two
made by Rivera and two by Mena – refer to a letter to an "insurance provider" or "insurance
company."  (*See id*. (time entries for 4/7/16, 4/8/16 (Rivera); 4/8/16, 4/13/16 (Mena).)  Without
explanation, this Court is unable to discern what this letter related to, to whose insurer it was
directed, or how it was connected to this case.  As another example, one of Rivera's time entries
mentions "loan research."  (*See id*. (time entry for 9/7/16 ("MoL re loan research")).)  As far as
this Court can tell, no "loan" was implicated in this wage-and-hour case.

Second, certain of the time entries do not obviously match up with the case activity
reflected on the Docket for this action, leading this Court to suspect that they reflect recording
errors.  For example, an entry dated May 9, 2016, prior to the commencement of this action,
refers to counsel's review of a "motion to withdraw."  (*Id.* (time entry for 5/9/16).)  Upon its
review of the Docket, this Court notes that Defendants' former counsel filed a motion to
withdraw a year later, on May 9, 2017, suggesting that the time entry was misdated, although the

Court should not have to sort such things out.  Another error seems obvious in the time entry of

Rivera, dated April 4, 2017, where he recorded making "final revisions to 2d amended

complaint" (*id.* (time entry for 4/4/17)), but where the Docket shows that the proposed Second

Amended Complaint had been filed with the Court the day before (*see* Dkt. 40-1).

      Worse, there are a number of entries for which, upon comparison to the Docket, this

Court cannot ascertain what was being referenced by counsel at all.  For example, a time entry

by Harmon on July 13, 2016 merely states "read motion" (Billing List (time entry for 7/13/16)),

but no motion of any kind appears on the Docket at or before that date, and this Court has no

way to tell if this time entry, too, may have been misdated.  Similarly, Rivera recorded 1.5 hours

on May 10, 2017 for preparing a "letter requesting initial conference" (*id.* (time entry for

5/21/17)), but no such letter appears on the Court's Docket, either on or after that date.  This

Court also cannot understand the significance of a time entry recorded by Rivera on August 22,

2017, indicating "letter to OC."  (*Id.* (time entry for 8/22/17).)  If "OC" was intended to mean

"opposing counsel," then the entry would make little sense, as the motion by Defendants'

counsel to withdraw was granted by the Court on May 10, 2017 (*see* Dkt. 53), more than three

months earlier.  The fact that this Court cannot piece together what counsel was doing, or why,

from these vague time entries also suggests that a reduction in counsel's fees would be justified.

*See Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) (holding that

where the vague descriptions in many of the time entries could not be connected to the motion at

issue, the court was unable to determine the reasonableness of those hours); *Louis Vuitton*

*Malletier v. Dooney & Bourke, Inc.*, No. 04cv5316 (RMB) (MHD), 2007 WL 1284013, at *3

(S.D.N.Y. Apr. 24, 2007) (finding a percentage reduction in fees to be warranted where time

entries did not appear to be directly related to the preparation of the sanctions motion for which fees were being awarded).

Third, the vagueness of certain of the presented time entries is so significant that it is simply impossible for this Court to determine whether they reflect reasonable lawyer or paralegal activity. For example, an entry by Harmon for June 26, 2016 shows that he spent 1.2 hours on a task merely identified as "complaint." (Billing List (time entry for 6/26/16).) This Court has no way to determine what Harmon may have been doing, for over an hour, with respect to the Complaint in this case, although it is at least clear that he could not have been drafting, editing, or reviewing it pre-filing, as Plaintiffs' Complaint had already been filed on June 10, 2016. (*See* Dkt. 1.)[10] Another example of an extremely vague time entry is the one recorded by Craig on September 28, 2016, which indicates 3.6 hours spent on "opposition," without explaining the nature of the task or tasks performed with respect to any opposition papers being referenced. (Billing List (time entry for 9/28/16 (Craig).) Also unduly vague is the time entry of Harmon on July 7, 2017, which merely states "research case law on MOD" (*id.* (time entry for 7/7/17 (Harmon)), without specifying the nature of the research being performed. Generalized descriptions like these, which are "insufficient to allow the Court to determine what . . . tasks the attorneys [or paralegals] were actually performing, and therefore whether the amount of time expended was reasonable," warrant a reduction in hours. *Thai-Lao Lignite*, 2012 WL 5816878, at *10; *see also, e.g.*, *D.J. ex rel. Roberts v. City of New York*, No. 11cv5458 (JGK) (DF), 2012 WL 5431034, at *7-8 (S.D.N.Y. Oct. 16, 2012) (noting that time entries "that merely state[] that 'research' was performed, without describing the issues for which research was required, are

---

[10] Although Plaintiffs later filed an Amended Complaint, that filing came nearly two months after Harmon's time entry (*see* Dkt. 13 (First Amended Complaint, filed Aug.18, 2016)), and thus it sheds no light on the meaning of the entry.

generally considered too vague to justify full recovery" (collecting cases)), *report and recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (Nov. 7, 2012); *Clarendon Nat'l Ins. Co.* v. *Compuplan, LLC,* No. 03 Civ. 7966 (LAP) (KNF), 2006 U.S. Dist. LEXIS 88161, at *20 (S.D.N.Y. Dec. 5, 2006) (finding that time entries such as "draft documents" failed to describe adequately the work performed).

Finally, although the Harmon Firm touts its experience in federal litigation, it is worth noting that its records, in this case, include an inordinately long series of time entries – covering nearly a month-long period – reflecting apparent confusion by the paralegals assigned to this case, as well as by Rivera, regarding how to obtain Clerk's certificates of default. (*See* Billing List (time entries for 2/26/18, 2/27/18, 3/2/18, 3/5/18, 3/14/18, 3/20/18 (Craig); 2/27/18, 3/2/18, 3/14/18 (Kessler); 3/14/18 (Rivera).) These entries describe tasks in terms like "dealing with certificate of default issue" (*id.* (time entries for 2/17/18, 3/14/18 (Craig); 3/14/18 (Rivera)); "deciphering clerk's notes" (*id.* (time entry for 2/27/18 (Kessler)); "figuring out clerk's notes on clerk's certificate" (*id.* (time entry for 3/2/18) (Kessler)); "working on figuring out clerk's certificate (why it keeps getting away from the court)" (*id.* (time entry for 3/14/18 (Kessler)), and "certificate of default – calls" (*id.* (time entry for 3/20/18 (Craig)). Although this does not present a substantial issue in terms of the total hours expended, it is still not reasonable to expect full recovery of fees for a law firm's continued inability to perform the largely ministerial task of obtaining a Clerk's certificate of default with respect to a defaulting party.

Courts in this district have applied reductions, often between 15 to 30 percent, to account for issues like vagueness in counsel's time records, and the resulting inability of the Court to assess the reasonableness of counsel's hours. *See, e.g., Custodio v. Am. Chain Link & Const., Inc.*, No. 06cv7148 (GBD), 2014 WL 116147, at *16 (S.D.N.Y. Jan. 13, 2014) (applying 15%

reduction for, *inter alia*, vagueness in billing records); *Congregation Rabbinical Coll. v. Village of Pomona*, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016) (imposing a 30% reduction of total number of hours for which fees were sought, to account for, *inter alia*, vagueness of time entries); *see also Carey*, 711 F.2d at 1142, 1146 (noting that a percentage reduction may be applied as a "practical means of trimming fat" from a fee application).  Here, the issues that this Court has identified with the Harmon Firm's time records are not extensive, but, to the extent those records evince errors or lack clarity, these problems do undermine the ability of this Court to make a thorough assessment of the reasonableness of the presented hours.  In addition, to the extent the firm's records suggest a lack of efficiency, as they do with respect to its efforts to obtain certificates of default, it is difficult for this Court to conclude that the expended time was reasonable.  Plaintiffs bear the burden of demonstrating the reasonableness of their fee request, and they have not carried it fully.  To account for the issues raised herein, I recommend applying an overall reduction of 10 percent to the requested fees.

### C.    Lodestar Calculation

Using the reasonable rates and hours described above would result in the following lodestar calculation:

| Attorney | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Harman | $450.00/hour | 27.00 | $12,150.00 |
| Rivera | $200.00/hour | 85.55 | $17,110.00 |
| Rivera (travel time) | $100.00/hour | 1.40 | $140.00 |
| Laird | $225.00/hour | 0.80 | $180.00 |
| Craig | $95.00/hour | 45.45 | $4,317.75 |
| Kessler | $95.00/hour | 1.35 | $128.25 |
| Mena | $95.00/hour | 2.45 | $232.75 |
| | | Total: | $34,258.75 |
| | | Less 10% for issues identified above: | -$3,425.88 |
| | | **Lodestar:** | **$30,832.87** |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar, *see Perdue v. Kenny A. ex rel. Wynn*, 559 U.S. 542, 552 (2010), and therefore recommends that Plaintiffs be awarded attorneys' fees in the amount of **$30,832.87**.

### D.     Costs

Plaintiffs additionally seek litigation costs in the amount of $603.18, including a $400.00 filing fee, $150.00 for an interpreter at a hearing, two separate $6.59 fees for "Certified mail of the Court's Order," and a $40.00 fee for service of the Order to Show Cause on TLI. (*See* Expenses and Costs.)  While the Court takes judicial notice of the filing fee and therefore finds it to be compensable, *see Guo v. Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *7 (S.D.N.Y. Feb. 5, 2016), this Court does not recommend that the additional claimed costs be awarded.  Apart from its own invoice itemizing these fees, the Harman Firm has failed to submit any underlying documentation supporting that the fees were incurred.  It is Plaintiffs' burden to demonstrate that the litigation costs sought were reasonably incurred and are properly recoverable from the defaulting Defendants, and in the absence of supporting documentation concerning the requested interpreter, mail, and service fees, Plaintiffs have not met their burden with respect to those litigation costs.  *Pastor*, 2017 WL 5625556, at *9 (declining to award process-server fees where the plaintiff had failed to submit underlying documentation from its counsel supporting that the fees were incurred).  This Court therefore recommends that only **$400.00** in costs be awarded.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that upon their default, defendants Trejo Liquors, Inc., and Johanny Trejo be held jointly and severally liable for:

1.     Damages to plaintiff Paulino De La Cruz in the amount of $157,785.94, representing:

a.     $77,264.04 in unpaid overtime compensation;

b.     $105.00 in unpaid spread-of-hours compensation;

c.     $70,416.90 in liquidated damages; and

d.     $10,000.00 in statutory damages under the WTPA;

2.     Prejudgment interest to plaintiff De La Cruz in the amount of:

     a.     $38,515.66 up to October 18, 2018 (the date that Plaintiffs filed their damages submissions); and

     b.     additional prejudgment interest at the rate of nine percent per annum to be calculated by the Clerk of Court from October 18, 2018 to the date of entry of final judgment;

3.     Damages to plaintiff Juventino Ramos in the amount of $42,577.23, representing:

     a.     $17,226.48 in unpaid overtime compensation;

     b.     $15,350.75 in liquidated damages; and

     c.     $10,000.00 in statutory damages under the WTPA;

4.     Prejudgment interest to plaintiff Ramos in the amount of:

     a.     $8,937.00 up to October 18, 2018 (the date that Plaintiffs filed their damages submissions); and

     b.     additional prejudgment interest at the rate of nine percent per annum to be calculated by the Clerk of Court from October 18, 2018 to the date of entry of final judgment;

5.     Attorneys' fees in the amount of $30,832.87; and

6.     Costs in the amount of $400.00.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

47

objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, U.S.D.J., United States Courthouse, 500 Pearl Street, Room 2550, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Broderick. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        September 10, 2019

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)

48